We're happy to hear argument in our first case number 1379-14, Lee v. Clarke. Mr. Hargatt. Good morning. May it please the court. My name is David Hargatt. I represent Mr. Mark Lee on the appeal of his Dismissed Habeas case. Mr. Lee was convicted of second-degree murder out of a state court in the city of Richmond. In this case, the only defense that Mr. Lee had was that he acted in the heat of passion. Unfortunately, though, the jury wasn't told what a heat of passion is. And so the question as framed by this court is, was counsel constitutionally ineffective in failing to request the jury instruction in which to find heat of passion? The lengthy description of what a heat of passion is is not common sense. It's not something that this jury would naturally know or understand. And it's really the meat and potatoes of what heat of passion is and what it means. I mean it's true the jury was instructed that the difference between murder and manslaughter was malice. But the jury was giving no other indication or instruction as to how to make that evaluation. The lengthy definition of the heat of passion instruction is cited throughout the materials. So I think, and maybe my colleagues feel differently, but at least from the perspective of the issue in this case, I mean you may be persuasive all day long in terms of whether this heat of passion instruction should have been given. But the issue here goes to this business of the habeas. In fact, this was a state court case and now it's in federal court. And you know Congress has limited the way in which we can review these cases. So speak to us and tell us why it is that you think we can reach this and should decide in the manner that you want us to. Well, I think that it's an unreasonable application of Strickland versus Washington. That's the bottom line. And I'm going to make that statement lightly. I mean I understand that there are facts that are against us with regard to the trial itself. This jury was given an Allen charge twice. So at least at two times during jury deliberations they were unable to come up with a verdict. Not only that, but the instructions that they were given, they were told this is the difference between murder and malice. I mean murder and manslaughter was malice. But the instructions that they were given basically told them to infer malice. The instructions that were given at trial say you can infer malice if there was a deadly weapon used. Well, there was a knife used here. So the jury could certainly infer malice. You can infer malice if there was an unlawful killing. Well, there's no defense to that. There was an unlawful killing. And again, the only defense in this case was heat of passion or the manslaughter defense. Can you turn to JA 197 you have in front of you? Yes, Your Honor. The jury was given that part of the instruction as well, right? The killing was committed while in the sudden heat of passion upon a reasonable provocation. That's correct. So they were told about your argument. They were told that the sudden heat of passion upon reasonable provocation was a defense, part of a defense. Your argument was that that term wasn't defined. Yes, and it's a lengthy definition. And the closing arguments in this case are not very long. And at least your client's closing argument, there was a lot of talk about heat of passion and provocation and so forth. He used those words. Unanswered by the government. I mean, it's always easy to look back and think of how you would do it differently and better and so forth. But that is the record as we get it. And so to go back to my friend Judge Wynn's question, I think that for our purposes now, you not only have to show that there was the violation of clearly established law as established by the Supreme Court. To which no reasonable man can differ. Or even if he did, he cannot unreasonably differ. But also, you have to show prejudice. And I think that's what I would be very interested in your talking about. And I think maybe that's what Judge Wynn was getting at too. Well, yes. I mean, that's clearly where this case comes down. But it's important to know that the jury was told what malice is and what they can infer from malice. But they weren't told all the additional language. So, yes, trial counsel did use the words heat of passion. Well, so does the judge. And did use the words reasonable provocation. So does the judge. But did not use the words emotional state of mind, such as hot blood. No, doesn't define heat of passion. And that's where your argument lies. Yes, and those words are very important because, see, the facts of this case are pretty simple. Mr. Lee was attacked. He was attacked by Mr. Plummer, who was high on cocaine, who wanted to try to get a gun, and wanted to obviously had an intention to kill Mr. Lee in the first place. He was attacked. Mr. Lee was beaten. And during the beating, he pulled out a knife. And this is not a big knife. He pulled out a knife that he carried for work purposes, and he swung it. And there was a stabbing. The two separated, and then moments later, they go at it again, is the testimony. They go at it again. If you look at the prosecutor's argument in response to the motion to strike, he says, well, if the fight was over when they separated the first time, and if he didn't go at him again, this would be a manslaughter case. But what the jury didn't understand was that going at it again is exactly what we're talking about here in the definition of this heat of passion defense. And specifically, hot blood, rage, anger, resentment, terror, or fear. There's clearly no time for him to have a cooling-off period, which is the other component here. So the jury didn't know any of that. All the jury knew was that he was likely stabbed, the victim, the deceased in this case, was likely stabbed after they went at it a second time. And that's really where the focus of the Commonwealth was. And if you look just a few pages after that on Appendix 199, the instruction that was given, malice instruction that was given, say, malice may result from any unlawful or unjustifiable motive, including anger, hatred, or revenge. So they can conclude that he had malice because he was angry. They did not know that heat of passion also uses that exact same word, anger, and very similar words, hot blood, rage, resentment, terror, or fear. How did it happen that they weren't given the instruction? Did they come up with instructions for the district court? I couldn't glean that from the record that you had in front of us. All I can say, Your Honor, is that they clearly missed it. This instruction that we're referring to on page 199, that is the beginning of the definition instruction that we refer to should have been given. And I included it. But I just want to be sure you understand my question. Yes. And I am interested in your answer too. But my question is, did each side, as often as usually happens, present jury instructions to the court? They were agreed upon instructions. They exchanged instructions, and then the court asked if there was any disagreement in the instructions, and there wasn't any with regard to this. And these are all state model jury instructions? That's what we have in Maryland, model jury instructions. Is that what these are? Exactly. Yes, ma'am. Except that the model jury instruction has the part in it that was missing here. That's the second paragraph of instruction number five that we just referred to, the one that told them that malice can come from anger. And you were just about to tell me where else that is. Well, I included the entire model jury instruction as an exhibit to the habeas case, and unfortunately I lost that page. That's all right. I'll find it. Don't worry. Go ahead. The language is quoted, and then it's an exhibit to the habeas petition. Okay. So when you're making a factual determination as to whether heat of passion applies, the question really becomes did he have justifiable reason for engaging the conduct that he engaged in? As far as the heat of passion, he's not guilty. We're not saying that he should be acquitted, that it was a self-defense claim or anything. What we're saying is that if the prosecutor even himself admits that the first stabbing event was heat of passion, it would be manslaughter, and he would not even brought the charge of murder. And then moments later – The instruction is not – his admission, if you will, is not quite there. It says it's a much closer case. But go ahead. Well, in actually responding to the motion to strike, he specifically says if they had not engaged the second time, I would have only brought to the court a manslaughter charge. I was looking at what he said to the jury. Right. That's without the jury being present. That's what he argues to the court. So essentially he admits that this is a case where he's convicted based on the second stabbing event, and that's where the jury had no way of knowing that this rage and anger and resentment, that those are components of heat of passion, and that there's nothing that separates the two events. There's no cooling-off period. They weren't given any instruction about that. And perhaps even more importantly, there wasn't any argument to the jury as far as the closing arguments are concerned. So the jury was completely left in the dark as to what heat of passion means. All they hear is heat of passion and provocation. Well, think about that. If you're a common juror and you're sitting there and you hear, well, he was provoked. Yes, he was. It was reasonable provocation. Yes, it was. But once they separated, he wasn't provoked again. A jury could easily make that conclusion. As a matter of fact, I think that's exactly what they found here, that there was no additional provocation that would justify the second stabbing. But they didn't know that this rage, this anger, this resentment, this terror and fear can continue over and, for lack of a better word, excuse the second stabbing. And this is not a situation where the defendant had done anything wrong. I mean, he is essentially – I'm sorry. He didn't do anything wrong before this altercation happened. He didn't do anything to bring upon the confrontation. He's simply sitting in a truck discussing with a gentleman about working. This plumber fellow who's high on cocaine, who the medical examiner shows was not only had acute cocaine use, but also he had much cocaine in the system, tried to acquire a gun, went after him and started beating him, pulled him out of the truck essentially. Those are the facts of the case. What do you think is your best case for finding that there is enough here for us to give relief under Edwin? Well, there's no doubt that there was deficient performance. That's not even disputed. So when we talk about prejudice, I understand that Strickland v. Washington is a difficult standard. But the standard for determining prejudice is only reasonable probability of a different result. And I think that that gets lost in all this other lingo because we know that that's not clear and convincing evidence. That's not beyond a reasonable doubt. That's not even preponderance. We have to find that the state court was unreasonable, not just wrong, but unreasonable in reaching the conclusion that you don't want us to reach here. And so that's why I'm asking you – Justice Breyer is always talking about, well, how do we write this case? So how do we write the opinion that goes your way? What Supreme Court case do we look to that would be the best marker for concluding that the state court had acted unreasonably here? And I think where we're going with it is even if we see that there is deficient performance in prejudice, that doesn't end the inquiry. It's the next step that we're asking at this point. How do we get there? Well, certainly I understand that that is where this case comes down. It does if we find prejudice. If we don't find prejudice, we don't even get to the last fraud, but assume we do. How do we deal with the final? A couple of things on that, Your Honor. First, you just basically say that the state court was unreasonable in its determination. The state court based its determination on the facts that were argued before, the same facts that were argued at the district court level. And that's the erroneous view of the facts that I've also put in the briefs. And in that case, they basically used the recitation of facts from the court of appeals who was only considering the sufficiency of the evidence and therefore had to view the evidence in the light most favorable to the commonwealth. So those facts are heavily skewed in the commonwealth's favor. That was their factual basis. So you could say, number one, it was an unreasonable determination of the facts. I mean, to look at the facts is not what Strickland v. Washington tells us. The way they did it is not what Strickland tells us. Strickland tells us totality of the circumstances, not take the court of appeals opinion discussing sufficiency and use that as your factual basis for determining whether there's prejudice. And that's what the state court did. That's what the lower court and this federal district court did as well. They both looked at the case using those facts. That's unreasonable determination of the facts. It's also an unreasonable application of Strickland v. Washington's prejudice prong because the standard is not as high as many would lead you to believe. Okay, I asked you for a case and gave me a rationale about unreasonable application of the facts, and I've got that. And you sort of said a sentence about unreasonable application of the law. I'm truly asking if you have anything else. I want to be sure I understand your best arguments. I don't have a case that's on point. I mean these are case-by-case basis. Maybe you want to elaborate on unreasonable application of the law because we know it's not erroneous application of the law. Correct, correct. I mean to some extent, you know, the U.S. Supreme Court just took up the case of Ayala. And in that case, the question was if there's a constitutional error and then the question is whether that was harmless or not, does the court have to give state deference? And the Ninth Circuit found that you did not have to give state deference because there's already a constitutional violation. So you could look at this and say that it is a constitutional violation for counsel to be completely negligent in requesting this jury instruction. And if that is the case, then the only question is, you know, obviously the prejudice prong. And the question I think that Ayala will actually resolve is whether you give state deference in that regard as well. Well, as to whether it's an unreasonable application to clearly establish federal law is really the issue here. And the jury here asked for some more instruction on premeditation. What significance do we attach to that? I would say that the difference between murder and manslaughter is malice, and that's murder whether it's first or second degree. There's only a very subtle difference between second degree and first degree murder. I mean if you think about it, second degree is a deliberate killing and first degree is a premeditated deliberate killing. So those are concepts that are very closely— They seem to be a pretty significant difference, but I think what I'm getting at here is, is it unreasonable to assume from the way that the jury deliberated on this, asking about premeditation and not about malice, that the jury was really not that conflicted as to premeditation and not malice? Well, but you're making a lot of assumptions there. It's not an assumption because the standard has been set so high in determining as to whether reasonable jurors would differ on this. I mean there certainly can be support for your side, but if there's support on the other side, then we're kind of locked. Yes, and I see that I'm getting into part of my rebuttal time. If I may continue. Answer the question. The reason that you can't make that assumption, Your Honor, is that you don't know what the jury was thinking. Just because a question is asked doesn't mean that came from one juror or all jurors. It doesn't mean anything really. And that is an unreasonable application to look into the jury box and say I know what these jurors were thinking because they asked a single question. It is, I think, an unreasonable way of looking at the facts. That assumes so much and puts the court in the position of the jury. And that's the wrong court, that's the wrong entity to be making that decision. So we don't know exactly. We don't have any information directly from the jury. We know that they were deadlocked. We know that they were having a hard time deciding the case. And I would say that given the facts and the circumstances, if the jury instruction had been given, there's not only a reasonable likelihood of a different result, that it is unreasonable to conclude otherwise. Thank you. Ms. Nerin? Good morning, Your Honors. May it please the Court. Before I get started, I would like to direct the Court's attention in response to a couple of questions from the Court about the jury instruction. Appendix pages 142 through 147 are the parts of the trial transcript where the record shows that the jury instructions were agreed upon by the parties and offered to the Court without objection. The trial judge, Judge Spencer, numbered those instructions and they became, in her words, the law of the case. So that's at appendix pages 142 through 147. Excuse me. Why would the trial judge give a model Virginia jury instruction and omit a vital part of that? I can't understand. Do you know why? The record doesn't seem to indicate it. Did someone say, Judge, I want the model instruction without the very important part? Did someone say that? Your Honor, for one thing, I point out to the Court on brief and again this morning, that the model instructions are not binding on the Court. No, I think that we all understand that, particularly as an experienced Virginia lawyer that's been questioning you. I think we got that. I beg your pardon? I think we understand that they're not binding. What we were asking was if it seems like a central part of what's involved in this case was omitted, how could that be? We're asking you for a little help with that. What we're talking about here is not that the jury wasn't properly instructed on the elements of each offense. What we're talking about here is a definitional instruction of the term heat of passion. And if you look at that part of the instruction which was left out, there are parts of that left out instruction which are actually detrimental to the defendant. We did not argue deficient performance, but we simply argued prejudice. But we have pointed out that there are parts of that instruction that are not helpful to the defendant. Appendix page 253 is the part of the instruction defining heat of passion. And it talks about heat of passion excluding malice. It talks about heat of passion involving anger or causing one to act on impulse without conscious reflection. But it also goes on in the last paragraph to say if a person acts on reflection or deliberation and his passion has cooled or he's had a reasonable opportunity for cooling, then the act is not attributable to the heat of passion. And in fact, that is what the trial judge, the habeas trial judge, held when he reviewed the facts of this case and determined that the habeas trial court expressly found that there was no reasonable probability that but for counsel's failure to request the definitional instruction of heat of passion, that the jury would have found him guilty of voluntary manslaughter. That's because, as counsel, I think, aptly points out, the review in court took the facts almost completely in the favor of the Commonwealth based on his argument as a man beating him fiercely in the face, almost to the point of, he believed, knocking his eye out. And his version is that in order to get the man off of him, he took the knife and he wailed it upward to get him off of him. And that very well was the context in where the stabbing occurred. Why would that hurt him if the jury believes his view? That doesn't seem to me that that was time for reflection. Oh, my eye's knocked out. Let me see. Let me reflect on that a little bit, see how important that is. Then I go stab him. That's not the facts, as he says. I mean, you can't take it. You can't have it both ways. I know adeptly is a very difficult, but it's one ought not to be. The logic is staying on his head. It doesn't hurt him. Our point is that he wasn't precluded and his lawyer was not precluded from. His lawyer strenuously argued that he had a provocation. Excuse me, counsel. Argument means nothing. As a matter of fact, many jury trials I had, the first day the judge said, what the lawyer says is not the law. It's not binding on you. It's simply argument. Now, all of a sudden, argument is elevated to the law. In the play A Man for All Seasons, it said the world construes by wit, but the court must construe by the law. And the law is they need to be guided by the law, not by a lawyer who's obviously biased, putting his or her spin on it. I can't believe it. This is a model instruction. It is the sine qua non of his defense. It defines what, and here's the problem it is in this case. I think it's very simple. If you take malice, the definition of malice is anger includes, malice includes anger. They had nothing to counterbalance the fact that also his passion includes anger. It's like having a one-armed man fighting a two-armed man and say, well, you know, you lose because you only made a blow with your left arm. Well, that's because I don't have a right arm. It wasn't defined for him. It's not about the lawyer arguing. It's about the law. And to say that that's not prejudice, he didn't have a chance because they said, well, it says right here, malice includes anger. He certainly was angry when he did it. They didn't know that that anger also was consistent with and inclusive of heat of passion. That is the essence of the case. Your Honor, in response to what you're saying. Please respond to that, that that's not unreasonable. I would say that, number one, that we don't know why this was not included. It doesn't matter. It doesn't matter. We know it wasn't. But number two, Your Honor, in response to what you've argued this morning, that is exactly what was that what that's the argument that was made to the habeas trial court when this case was brought in state court. And the court determined in this case that the facts, the evidence presented in the case was so strong. That's the next inquiry. If the inquiry that Judge Breger is going to is the determination of prejudice in the first instance. And if it's presented to the court, then we, our review then looks at the court in light of the law that tells how we can review a state court determination of habeas. His question is going more in terms of the first instance of prejudice and the question that anger was included in the definition of malice. But the jury wasn't instructed that anger could also be the basis for the heat of passion. That's the prejudice he's talking about from the counsel's efficient performance aspect of it. So it doesn't mean, I mean, I think if you follow where I'm going with this, that even if you say yes to the answer here, that doesn't end this case. Because there's another part to this case that I think is pretty strong and seems like to me that might be a focus you want to go. It may be where you want to go. Well, the standard of review that this court has to apply in looking at the state court decision is applying the AEDPA standard and the Strickland standard. And under this doubly deferential standard, the pivotal question for this court, the only question before this court, is whether Mark Lee has shown by clear and convincing evidence that the state court's determination on the Strickland prejudice issue was not just wrong, but it was unreasonable. And we submit that Lee has failed to meet that burden. Okay, well, let's take it. Let's just get analytical about it since we're talking in terms of semantics. What reason under law or fact supports that state decision? The court? What reason? No, not what they said. We're talking about reasoning now. Reasoning based on terms of law and the fact. You tell me, again, what's your strongest argument that this reason supports it? Reason. My strongest argument in this case is that the evidence of a malicious killing was so overwhelming that... Overwhelming in this case? Absolutely. Okay, they had Allen charged twice. Okay, go ahead. They had the... I will go to that part of the argument because the court not only relied on looking at the facts of the case, where this defendant, and I disagree with other counsel's statement that Mr. Lee had nothing to do with starting this altercation. Mr. Lee rides into Mr. Plummer's neighborhood. Lee sees Plummer. He starts the altercation by making a derogatory facial expression that provoked Plummer. A derogatory, where he poked his tongue out? I'm sorry? You said a derogatory facial expression, where he poked his tongue out at him? We don't know. We don't know. I just wonder what that is. Mr. Drayton says he turned his head. It was like he turned his head upside down. I'm not sure what that means. Pretty weak stuff. Come on. And I'm not sure it's helpful, but I get your point on it because, I mean, we've got to look at this contextually. He's in his car, and he's riding by. I don't know what you mean by he makes a face that causes someone to come over and punch him out. I mean, I'm not sure that's starting something. Mr. Drayton said at page 93 of the appendix record that this facial expression was such an expression, it was such a look, that it would have provoked anybody. So there's no question that Lee, excuse me, Mr. Plummer opposed it. So if the victim had stabbed the defendant instead, he would have gotten off. There wouldn't have been a crime because he was so provoked by this facial expression. Come on. Okay. I think it really would be helpful for me if you didn't start with your weakest argument but started with your strongest, which is the application, the review that we're giving this case. And you'd redirected us to the state habeas courts discussion. And I, frankly, don't understand the state habeas courts discussion. So I would welcome your, I think maybe this is what Judge Gregory was getting at, would welcome you getting me through it. The analysis that I see is it's JA 295. That is the, as I understand it, the sole analysis, that paragraph at the bottom of 295 is the habeas courts only discussion of this claim and why it's rejecting this claim. Are you with me? Yes, Your Honor. With regard to claim A. Okay. And what we have said here is that the state habeas court looked at all the facts in the case. He didn't just look at the Court of Appeals statement of the facts on appeal. He looked at the entire record. And he looked at all of the evidence in the case. That's what he says here. He looked at all of the evidence in the case. And he also considered the inferences that could be drawn from the jury deliberation process. And the state court found that the record supported the inference that the jury was grappling at that point as to whether Lee acted with premeditation, the element which distinguishes first and second degree murder. And you think that's based on reason? Absolutely. Well, tell me this. Well, since we don't know, if one juror said, you know, this is definitely first degree murder. And all 11 said, oh, no, at best this is manslaughter or second degree murder. And to shut him or her up, they said, listen, let's get this clear. Judge, can you give us an instruction on premeditation? And you go back and say, duh, you see that? What does that mean in terms of preponderance of anything? That's one juror, perhaps, wanted to – that's what reason is. That's speculation. That's not reason. Your Honor, I would point the court to appendix pages 184 through 185, where the record shows that the jury deliberated at length and received two Allen charges before the court read jury instruction seven, which told the jury that if it had a doubt, if it had a doubt to the grade of the offense, then Lee was entitled to the benefit of the doubt. And thereafter, the jury deliberated only 16 minutes before returning a verdict of second degree murder. At the sentencing phase, the jury deliberated less than an hour before fixing Lee's sentence at 40 years in prison, the maximum that he could receive for second degree murder. It was the fact of the case that there was an altercation, that Mr. Plummer was unarmed, that Lee, being beaten on, pulls his knife and starts swinging, manages to stab this Mr. Plummer seven times, manages to stab him in the chest to the point where he backs up. Mr. Lee admits in his testimony that at that juncture, Mr. Plummer was no longer being aggressive towards him. He was no longer being struck. That's at page 140 of the appendix. May I ask you a question, counsel? He backed up. Counsel, counsel, may I ask you a question? Don't you have to concede with all of your argument about how strong this case, in your view, is? This was a case where heat of passion was an appropriate instruction? Yes. I think if it had been asked for, it would have been given. It was given. It just was given improperly. Your Honor. Did it not? Your Honor. Am I missing something? Wasn't a portion of the heat of passion instruction given in this case? The instruction that- A yes or no could help. The jury was- Was a portion of the model instruction on heat of passion under Virginia law given in this case? The definition of heat of passion was not given to the jury, Your Honor. That's what portion means, I thought. Was that definition part of a model, a numbered model jury instruction given in this case? Yes. I must not- And was the rest of the model Virginia jury instruction given? The model instruction- Without this definition? This instruction encompasses the definition of malice, and it encompasses the definition of heat of passion. And you would acknowledge that there was- This is all part of one instruction, and the instruction that was given to the jury did not include the whole model instruction, but omitted the heat of passion explanation. Yes. Correct? Yes, Your Honor. That's correct. Okay. Now, I still- I'm sorry. I'm a little slow. If you could still go back to JA 295, and I know what you told me, but I don't track it with what the district court did, or the state habeas court did there. It seems to me that all it did was, quote, as its rationale, two sentences from it looks like, I understand you're the lawyer there, your memorandum. Do we have your memorandum in the record? Yes, Your Honor. And where's that? I mean, that must have been some memorandum. If that's the- Good for you. If it's the entire rationale of the habeas court. The court adopted the entire- No. The court finds upon review of the trial record. That's what it says. Now, maybe you can say that's an adoption of something. And then it says, then it starts to quote you. Well- And then the court finds and quotes you. Well, first of all, Your Honor, I'd like to say that in all due respect, if the judge had said nothing except habeas denied, habeas relief denied, we would still be here arguing the facts in the light most favorable to the prevailing party. Absolutely right. But he did say something. And what I'm trying to do is to figure out sort of how, what that something, how much I can rely on that something. Well, Your Honor, I apologize. I haven't gone back and found in my- But do you think the transcript of your- because it looks like it's from the transcript of the April 12 hearing is in this JA. Absolutely. Okay. It's in mine. Yes. Well, you guys created it, so I hope you gave us the same one. Well, that was the other counsel. Maybe other counsel can quote the point. Well, you're both sides, and you get together on it. Well, I would like to refocus the court's attention to what the state habeas court found. And the state habeas court found, adopted the director's argument that the facts of the case were, and distilled to its essence, a situation where there's a fistfight, the defendant pulls a knife, starts swinging to get Mr. Plummer off of him. He stabs him. Every witness says that Mr. Plummer is no longer striking Mr. Lee, that there is a disengagement between the parties, and then Mr. Lee goes at Mr. Plummer again. Disengagement would not be the passion, would it? I mean, there's no evidence in terms of the time to reflect here.  And I know, as the facts were presented here, and I think we have to take them as they were presented, not just in terms of a summary of the court of appeals, but also what actually happened below. Yes. And again, this is the decision that the habeas trial judge was required to make. And so for this court, this court, this court, under the doubly deferential standard of review, the pivotal question for this court is simply that, did the state court's determination of no prejudice for failure to give this definitional instruction, was that not just wrong, but was it unreasonable? Was Mr. Plummer on cocaine? I'm sorry? Was Mr. Plummer on cocaine at the time? The medical examiner's, may I answer the question? My red light is blinking. The medical examiner's test report indicates there was cocaine in Mr. Plummer's system. There's absolutely no other reference to cocaine in the record. Nothing. That's the only place where it was. In him. There was no argument about cocaine. Counsel, I know a death is difficult, but federal courts sit now. So fairness has nothing to do with it anymore, does it? Isn't that incredible? We sit here. You give a long instruction, and you leave out the part that's most important to a defendant. And then you say, oh, it's reasonable to say, oh, you know what, he would have been convicted anyway. Next time we're going to say, well, those people would have been convicted anyway. What's the next step? Well, you know, what neighborhood did they come from? Well, you know, the jury probably would have convicted them anyway. What is the metric for prejudice now? It's incredible. When you clearly violate the law, you don't give them a chance to have an instruction that that's the only way you can have a chance. If I hauled off and hit you in your face and almost knocked your eye out right now, and you had a gun, and I took ten steps away from you with my back turn and you shot me, that clearly would be a heat of passion. That's the whole point of it. You are disengaged, but passion continues to engage you. As a matter of fact, you know from law school, heat of passion can last for days. Remember those cases we talked about? We know that. And to take that definition from him and then say cavalierly, oh, you would have been convicted anyway, that's unbelievable. And that's unreasonable. Your Honor, with all due respect, the court is substituting its judgment for the judgment of the state habeas trial court and not applying the appropriate standard of review. We ask the court to affirm the disparate court's determination. Are there any further questions? Thank you. Are we doing that? That was sort of intimated that if we went in a direction that is indicated, we'd be substituting our judgment for that of the state court here. That is not unreasonable. Well, I think that you have to make the determination of whether it's reasonable, and you could call that substituting your judgment for their judgment, but it's essentially following the law, the dictates that we have. I would like to point out just the record does include the information. So let's start with the model jury instruction that's on page 253. That first paragraph on page 253 is the instruction that was given. That's the instruction number five that mentions anger. And then the rest of the jury instruction was not given. In state court, the motion to dismiss that was filed by the attorney general's office is included on pages 255 through 269. There's an excerpt of the motions hearing that was held in state court where we argued to the court these aspects of the law, and that motion hearing is found on appendix page 275 through 292. The argument that Mr. Lee is somehow at fault here, I have to disagree with. It's a little ridiculous. They lived in the same neighborhood. Nobody went looking for anybody. The suggestion that he made a facial expression that would have set anybody off is not what the facts are. The facts are what Mr. Drayton said was that anything as little as a look could set off Mr. Plummer, not Mark Lee. So that's completely different, and that's where we get this skewed look at the facts. When you start looking at the facts and assume that everything that is in the Commonwealth's favor and excludes everything that's in the defendant's favor, you're necessarily going to come up with this distorted look at the facts. We don't view these habeas cases through such a distorted lens. Well, that's certainly what the district court did here. Is it your contention that that's also what the habeas court did? Well, I think that, yes, you can make that determination. And where do we get that? What in the record can we point to and say that? In the record, the judge specifically says at the end of the motions hearing that I agree with the Commonwealth's argument. Right. The Commonwealth's argument is based entirely upon the motion to dismiss that was filed. The motion to dismiss that was filed includes a recitation of facts. It is exactly the same thing that the U.S. District Court used. We don't have – we have the transcript of that hearing, but I guess we don't have the motions. We do have the motions, Your Honor. I mentioned it was on pages – and, of course, it's in the record. Whether it's in the appendix is a different story. But it is in the appendix 275, Your Honor. No, that's the hearing. I've got the hearing. I've got the hearing transcript. I'm sorry. You're right, Your Honor. You are on top of it. It is 255. The motion to dismiss starts on 255, and if you look over to the statement of facts on 258, what it cites is exactly what the Court of Appeals did on appeal. So the thing that's called the motion to dismiss is a habeas petition, right? Is the response to the habeas petition. Yes, Your Honor. I interrupted you. I'm sorry. Well, I am out of time, Your Honor. Okay. Well, you can have a minute or two because I was taking up all your time there. Well, the point is, is that this is exactly the same thing that was argued in the state court. The state court agreed with their argument. So by definition, they're agreeing that this is the statement of facts. They did say they reviewed the entire record. Of course, you're going to say you reviewed the entire record when you decide on a case. But all we have is that brief explanation for what the court did, and we know that the court agreed with their argument. And so you can easily conclude that the court also relied upon the statement, the recitation of facts from the Court of Appeals. And if you look at it, as we've pointed out throughout this entire process, it did not include all those facts favorable to the defendant or the habeas petitioner in this case. Thank you very much. Thank you, Your Honor. Mr. Hargit, I understand that you're court appointed, and we very much appreciate your effort. We couldn't do these cases without court-appointed lawyers. Client, good job. Thank you.
judges: Diana Gribbon Motz, Roger L. Gregory, James A. Wynn, Jr.